# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | Sheila Finnegan |
|---|---|---|---|
| **CASE NUMBER** | 08 C 6912 | **DATE** | 8/11/2010 |
| **CASE TITLE** |  | Makowski vs. SmithAmundsen LLC | |

**DOCKET ENTRY TEXT**

For the reasons discussed below, Plaintiff's First Motion *In Limine* and Motion for Spoliation Sanctions (109) is denied.

■ [ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

Plaintiff Laura A. Makowski filed a First Motion *In Limine* and Motion for Spoliation Sanctions (109) asking the Court to exercise its inherent authority and statutory authority under Fed. R. Civ. P. 37(c)(1) to sanction Defendants for alleged spoliation and other discovery abuses. For the reasons discussed below, the motion is denied.

### BACKGROUND

On February 4, 2008, Plaintiff was terminated from her position as Marketing Director for SmithAmundsen LLC ("the Law Firm"). She was told that this position was being eliminated pursuant to an organizational restructuring. Unbeknownst to the Law Firm when it terminated Plaintiff (who was then on maternity leave), the second in command in the marketing department, Sara Goddard, recently had accepted an offer to join another firm. The Law Firm learned of Goddard's imminent departure on February 5, 2008. The Law Firm tried to persuade Goddard to remain and run the marketing department but she declined to do so.[1]

Before leaving the Law Firm, Goddard gave an exit interview to the firm's Director of Human Resources, Molly O'Gara. During the interview, Goddard was highly critical of Plaintiff's management style and performance as Marketing Director and said this was one of the reasons that Goddard had begun looking for a position at another firm. O'Gara had not heard these criticisms before.

After terminating Plaintiff and losing Goddard to another law firm, the Law Firm began searching for a new hire to run the marketing department rather than offering the position to Plaintiff. In the meantime, Plaintiff retained counsel to consider possible claims against the Law Firm stemming from her termination. On February 25, 2008, her attorney sent a letter to the Law Firm asking (among other things) that the firm

| STATEMENT |
|---|

preserve certain electronic and other documents, including all materials relating to the employment and/or termination of Goddard.

On December 3, 2008, Plaintiff filed a complaint alleging violations of Title VII and the Family and Medical Leave Act. After discovery began, Plaintiff's counsel deposed both Goddard and O'Gara concerning Goddard's exit interview. In addition, Plaintiff received two typewritten summaries of the interview prepared by O'Gara (one in hard copy only and the other in both hard copy and electronic form).

In her motion, Plaintiff contends that Defendants allowed important evidence and documents related to the Goddard exit interview, including metadata, to be permanently lost or destroyed, resulting in prejudice to Plaintiff. Specifically, Plaintiff complains of Defendants' inability to produce (1) O'Gara's handwritten notes of the Goddard exit interview, and (2) the electronic version (with metadata) of one of O'Gara's two typewritten summaries of that interview. As a sanction, Plaintiff asks the Court to enter an order *in limine* precluding Defendants from presenting evidence or arguments at any hearing, trial or in any dispositive motion papers regarding alleged criticisms of Plaintiff's performance and/or exit interviews of Goddard containing such criticisms.[2] She also seeks her fees and costs in bringing the motion.

## DISCUSSION

There is no question that the materials at issue--O'Gara's handwritten notes of the Goddard interview and the electronic version of one of the typewritten summaries of the interview--were never produced by Defendants. This Court's focus is on whether Plaintiff has demonstrated that: (1) Defendants willfully breached a duty to preserve such materials, and (2) Plaintiff is prejudiced from the claimed breach. *See Wells v. Berger, Newmark & Fenchel, P.C.,* No. 07 C 3061, 2008 U.S. Dist. LEXIS 21608, at *18 (N.D. Ill. Jan. 10, 2008). Based on the record before it, the Court is unable to find either a willful breach by Defendants, or prejudice to Plaintiff.

With respect to the breach issue, Plaintiff's counsel deposed O'Gara at length concerning her documentation of the Goddard exit interview, what was and was not produced, and the reasons why certain materials were not produced. O'Gara said she made handwritten notes during the actual exit interview on February 21, 2008. As soon as the interview ended, she typed a summary of the interview on her computer, which she then printed. (Tr. 145-47.) This printed version of the first summary was produced to Plaintiff. She said it was "likely" that she printed this first summary for purposes of editing it and thus the summary that was produced might not have been a final version. (Tr. 182.) Approximately two weeks after creating and printing the first summary, O'Gara searched for the document on the computer system (so she could email it to someone), and could not find it. She did not know if what she previously had typed on the computer (before printing it) had been lost or destroyed. Her "best guess" was that she never saved it properly and instead only saved it in a "temporary" computer file (she had caught herself several times before this printing a document in draft form before saving it). (Tr. 155-56.) Because O'Gara could not find this first summary on the computer when she looked, she said that she ended up creating a second summary on her computer on March 3, 2008. (Tr. 153-55.) Both a hard copy and electronic version of the second summary were produced to Plaintiff. O'Gara could not recall whether she created this second summary from scratch or if she still had her notes or a printout of the first summary for reference. (Tr. 154, 158.)[3]

While the wording in the first and second summaries is not identical, the content is largely the same. Both reflect Goddard's detailed criticisms of Plaintiff's performance as marketing director. The only substantive difference between the summaries that Plaintiff has highlighted is found in the introductory paragraph. The first summary (dated 2/21/08) begins: "I met with Sara Goddard today for her exit interview,

as her last day at the firm is tomorrow."   The second summary (dated 3/3/08) begins: "I met with Sara Goddard on the day that she gave her notice of resignation to Mike DeLargy - which was February 5, 2008, and again on February 21, 2008.  This memo is a result of my notes from those meetings."

O'Gara testified that she was not able to find the handwritten "notes" that she made (referenced in the second summary), so these were not produced.  She had no recollection of doing anything in particular with the notes, and no one suggested that she should destroy them..  She searched for the notes but was unable to locate them. (Tr. 143-44, 163.)

This Court is unable to conclude from the evidence presented that O'Gara or anyone else at the Law Firm willfully breached a duty to preserve materials related to Goddard's interview. Considering all the circumstances, it is certainly plausible that O'Gara never saved the first summary of the interview on her computer and this was why the electronic version with metadata could not be produced.  As for O'Gara's handwritten notes made on the day of the actual interview (February 21, 2008 or perhaps February 22, 2008), Defendants had an obligation to preserve these if they were still in existence as of the Law Firm's receipt of the preservation request on February 25, 2008.  Even assuming that they were, the Court is unable to conclude from the record before it that the handwritten notes were deliberately destroyed in order to conceal information from Plaintiff.  It is entirely possible that the notes were inadvertently lost or destroyed.[4]

We also do not find that Plaintiff is prejudiced from the claimed breach since Plaintiff had the opportunity to question Goddard as to the timing of the statements and the accuracy of O'Gara's summaries.  In reality, Goddard herself is the true "source" of the information at issue-- not O'Gara's notes or electronic summaries of the interview.  Plaintiff deposed Goddard at length concerning what she said to O'Gara during the exit interview and when.  Goddard confirmed that she indeed had voiced criticisms of Plaintiff's work performance during her exit interview.  Counsel also showed Goddard copies of the first summary of that interview (the printout dated 2/21/08) and asked if it was accurate.  Goddard responded "[y]es and no" because she recalled the interview taking place on her last day of work (February 22, 2008) rather than on February 21, 2008, and because the summary omitted some of the specific examples that she had provided concerning Plaintiff's performance problems. (Tr. 152.)  Counsel then requested details concerning these examples and Goddard provided this information.

To the extent that evidence concerning Goddard's criticisms of Plaintiff's job performance is relevant to the resolution of the claims alleged in the lawsuit, the evidence likely will be offered through Goddard's testimony rather than any summary prepared by O'Gara.  As noted above, Goddard confirmed that the criticisms of Plaintiff were made by her during the exit interview and this happened before she departed from the Law Firm on February 22, 2008.  She also confirmed the substance of O'Gara's first summary, though Goddard felt it did not include all of the details.  While Goddard does not know when O'Gara created the first summary of the exit interview (did O'Gara really create it immediately after the interview as she claimed during her deposition), this is not material.  What matters is the date when Goddard informed the law firm of these criticisms.

In conclusion, the Court finds that Plaintiff has not demonstrated that Defendants willfully breached the duty to preserve evidence related to Goddard's exit interview and that Plaintiff has suffered prejudice as a result.  Therefore, the Court declines to sanction Defendants by awarding fees and costs or by entering an order precluding Defendants from offering evidence or arguments regarding alleged criticisms of Plaintiff's performance and/or exit interviews of Goddard containing such criticisms.

|  |
|---|
| **STATEMENT** |
| Plaintiff's First Motion *in Limine* and Motion for Spoliation Sanctions is denied. |

1. Three months later, in May 2008, Goddard had a change of heart and returned to the Law Firm to serve as Business Development and Marketing Manager.

2. Plaintiff's reply brief also argues that the evidence should be excluded because it is not relevant to the sues to be decided in the lawsuit. We decline to consider this basis for the motion *in limine* since such an evidentiary ruling is better addressed by the District Judge in the context of the trial.

3. O'Gara later testified that she had her handwritten notes available on March 3, 2008. (Tr. 160-61.) She also acknowledged that she had no actual memory of how she went about creating the second summary. (Tr. 154 ("So at that point I believe I started the memo again, or I don't have an actual memory of what happened, if I picked up an earlier version or if I started a new version. I don't know.").) Given her lack of memory, it is not surprising that O'Gara acknowledged that it was possible that the electronic version of the first summary still existed on March 3, 2008 when she created the second summary. (Tr. 155.)

4. Logically, if Defendants and O'Gara wanted to intentionally destroy interview notes to conceal information in the notes, it would be odd to refer to the notes in the typewritten summary of the same interview that was produced. Similarly, if the intention was to "invent" evidence that Goddard voiced criticisms of Plaintiff during the exit interview, it would be odd for Defendants to turn over both versions of the exit interview summary rather than just the one that best served their purpose. Of course, Defendants would also need Goddard to go along with the plan and falsely testify at her deposition that she voiced the criticisms of Plaintiff during the exit interview when she did not. Plaintiff's speculate that the missing handwritten notes and electronic version of the first summary (if it ever existed) might provide evidence of such conduct. *See* Reply at 3 ("Defendants...appear to seriously be contending that they may engage in this kind of post-hoc rationalization of their conduct through newly-created documentation prepared after they were put on notice of a claim, allow the source materials to be destroyed, and then rely upon a 'trust us' argument when the missing evidence is called into question."). Such speculation is an insufficient basis upon which to grant the motion.