# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | Sheila Finnegan |
|---|---|---|---|
| **CASE NUMBER** | 08 C 6912 | **DATE** | 8/11/2010 |
| **CASE TITLE** | Makowski vs. SmithAmundsen LLC | | |

**DOCKET ENTRY TEXT**

For the reasons discussed below, Plaintiff's Second Motion *In Limine* and Motion for Sanctions [111] is denied.

■[ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

Plaintiff Laura A. Makowski filed a Second Motion *In Limine* and Motion for Sanctions (111). It moves the Court pursuant to Fed. R. Civ. P. 37 for an order *in limine* precluding Defendants from (1) making any affirmative use of certain documents that were produced on the day before, or in some instances after, discovery closed; and (2) calling or adducing testimony from witnesses disclosed on the last day of discovery. Plaintiff also seeks sanctions for the alleged late production and disclosure, namely, her costs and attorneys' fees in bringing the motion and an order allowing Plaintiff to use any of the recently produced materials without further showing with respect to foundation. For the reasons discussed below, the motion is denied.

## BACKGROUND

On February 4, 2008, Plaintiff was terminated from her position as Marketing Director for SmithAmundsen LLC ("the Law Firm"). She was told that her position was being eliminated pursuant to an organizational restructuring. The next day, the second-in-command in the Marketing Department unexpectedly announced her intention to leave the Law Firm. At that point, Defendants began searching for a new hire to run the marketing department rather than offering the position to Plaintiff. On December 3, 2008, Plaintiff filed a complaint alleging violations of Title VII and the Family and Medical Leave Act (she was on maternity leave at the time of her termination).

Discovery closed on May 4, 2010. The case is set for trial before the District Judge on October 25, 2010.

| STATEMENT |
|---|

## DISCUSSION

Plaintiff's motion relates to three categories of discovery. We discuss each in turn.

Emails Disclosed on May 3, 2010: On May 3, 2010 (one day before the close of discovery), Defendants produced approximately 4,000 pages of material consisting of 850 pieces of email.[1] Plaintiff argues that sanctions are appropriate because this was a voluminous and last minute production of documents and she was unable to question witnesses about them during the already-completed depositions. She further asserts that "a number of these materials are key to plaintiff's case and theory of liability, and plaintiff intends to use them at trial as part of her case in chief and to impeach defense witnesses." (Mot. 3.) Apparently, there are also some documents (not identified) that are damaging to Plaintiff's case since she filed this motion to prevent Defendants from "mak[ing] use of these materials at trial." *Id.*

Not surprisingly, Defendants have a different perspective. They argue that the emails were produced within the time allowed by the Court (May 3, 2010), so were not produced too late. In addition, they observe that, when Magistrate Judge Mason set the deadline for producing these emails, Plaintiff knew that the due date was after the conclusion of depositions and on the eve of discovery closure yet did not raise this issue. (Resp. 12.) Defendants also contend that almost none of the 4,000 pages of emails have anything to do with the case. They note that the large number of emails resulted from Plaintiff's insistence on the Law Firm searching the email accounts of ten individuals using broad search terms (e.g., "woman"; "female"; "treat"; "market"). This necessitated Defendants hiring a computer consultant. Defendants also observe that Plaintiff's opening brief failed to identify how many "key" emails were produced and how they were significant. Defendants contend that not a single email relates to the reasons for the decision to eliminate the Director of Marketing position. In reply, Plaintiff says that the production included "hundreds" of relevant emails and provides samples of such documents.

Whether the emails in question are "key" or not is subject to debate. But the Court need not examine individual emails to resolve this issue because Defendants were given an extension of time until May 3, 2010 to produce the results of the email search and complied with this court order. Therefore, the Court declines to hold that the production of these emails was late and that sanctions are appropriate. Plaintiff's motion as it relates to the emails produced on May 3, 2010 is denied.

Documents Disclosed After Discovery Closed: On May 5, 2010 (two days after discovery closed), Defendants produced a 2003 performance evaluation of a former associate of the Law Firm (a four-page document bates-stamped 9506-9510). Plaintiff complains that she had no opportunity to conduct discovery concerning this document or to depose the former associate about it since discovery had closed by the time it was produced. Defendants contend that they produced a personnel file containing this 2003 performance evaluation (at least the first page of it) as early as November 5, 2009. They say they were not aware when the personnel file was produced that only the first page of the performance evaluation had been copied. Defendants note that they first learned of the copying error during a deposition when Plaintiff's counsel presented the incomplete document (marked as an exhibit) to the deponent and informed her that he only had the first page. Defendants observe that Plaintiff's counsel made no effort prior to the deposition to inform them of the copying error and to request a complete copy. After learning of the copying error during the deposition, Defendants produced a new and complete copy on May 5, 2010 (two days after discovery closed). In her reply brief, Plaintiff does not respond to these arguments and is silent as to this particular document. Based on the facts presented, there is no basis for excluding the document or awarding sanctions. The motion is denied as it relates to this 2003 performance evaluation produced on May 5, 2010.

| STATEMENT |
|---|

On June 18, 2010 (well after discovery closed), Defendants produced 29 additional pages of emails (bates stamped 9523 to 9551). The cover email from defense counsel stated: "[A]ttached are emails that I believe have already been produced, but in an abundance of caution, I am producing them again." Because Plaintiff's opening brief and Defendants' responsive brief were filed before these emails were produced, the only discussion of the emails is found in Plaintiff's reply brief. (Reply 2-3.) Based on the Court's review of the emails, they appear to be tangential (at best) to the issues in the case.[2] This is perhaps why Plaintiff has not argued that she suffered prejudice from the late production of any of these emails. Given the small number of emails, the lack of prejudice from the late production of these particular documents, and the absence of evidence that Defendants acted in bad faith, the Court denies the motion as it pertains to these 29 emails.

<u>Defendants' Supplemental Rule 26(a)(1) Initial Disclosures on May 4, 2010</u>: On the last day of discovery, Defendants served Supplemental Rule 26(a)(1) disclosures. These disclosures identified eight additional persons who worked at the Law Firm as having relevant knowledge. Plaintiff argues that the witnesses should be excluded and Defendants sanctioned because the witnesses were disclosed late so she was unable to conduct discovery regarding their proposed testimony. (Mot. 4.) Defendants, on the other hand, say they were not required to supplement their disclosures to identify the eight persons (they did so out of an abundance of caution) because each was previously identified in the litigation. They point to language in Rule 26(e) that supplementation is required "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Defendants also argue that the late disclosure was harmless since Plaintiff was fully aware of each of the eight persons. Plaintiff disagrees and observes that, even with the supplemental disclosure, she still lacks sufficient knowledge of the relevance of these witnesses to the case. (Reply 11-12.) Finally, Plaintiff argues that Defendants easily could have identified each of these witnesses long before discovery closed but did not. (Reply 12.)

In considering the issues and arguments, it is necessary to understand the significance of the witnesses to the overall case and what was known about these witnesses prior to the supplemental disclosure on the last day of discovery.

A) <u>Supervising Partners</u>: Plaintiff's Initial Disclosures on February 18, 2009 identified three former female associates as persons with relevant knowledge. The disclosure said that each had information about her employment by the Law Firm; her treatment (including reviews and compensation) while employed, especially as compared to her male counterparts; the announcement of her pregnancy; treatment following that announcement; the Law Firm's treatment of female employees in general and those who have become pregnant and taken maternity leave in particular; and circumstances and communications surrounding her leave, departure and/or termination as an employee.

Defendants' supplemental disclosures (served on May 4, 2010), identified four current and former partners of the Law Firm who "have information relating to the employment" of these three former associates. The record demonstrates that these current and former partners had previously been revealed to Plaintiff through discovery. For one thing, Plaintiff sought and received the personnel files for the three former female associates and those files identified their supervising partners. Indeed, for one of the former female associates, Plaintiff's counsel prepared a draft affidavit for her to sign that referenced her supervising attorney.[3] In addition, the supervising partners were identified through deposition testimony. Two of the three former associates testified about their supervising partners when questioned by Plaintiff's counsel during depositions. Testimony about the supervising partner for the third former associate occurred during the deposition of another law firm employee.[4]

| STATEMENT |
|---|

Under all the circumstances, the Court finds that Plaintiff was not "unfairly surprised" to hear of the existence of these witnesses and learn that they had knowledge concerning the former female associates. Because Plaintiff learned of these witnesses through the discovery process, Defendants were not required to supplement their disclosures to identify the witnesses, though this certainly is the better practice. While the Court denies the motion because there is no justification to sanction Defendants or exclude the witnesses, the Court will require Defendants to supplement their disclosures to provide more specificity concerning the information that the supervising partners possess relating to the employment of the former associates. In addition, Plaintiff may seek leave of the District Judge to depose one or more supervising partners prior to trial if subsequent developments suggest that is necessary. At this juncture, it is unknown what, if any, evidence will be admissible from or about the former female associates and, hence, whether testimony from the supervising partners will actually be offered.

B) <u>Office Services Manager</u>: One of the eight persons identified in Defendant's supplemental disclosures was the Law Firm's Office Services Manager. The disclosure states that she is expected to have "information relating to her interaction with Plaintiff during her employment at [the Law Firm], including the issues regarding requests for office space." While Plaintiff argues that this is a "cryptic" description so it is not clear what relevant information the witness could have, Defendants point out that there was discovery concerning this witness and her interactions with Plaintiff. For example, Plaintiff herself testified at her deposition that she sent emails to the Officer Services Manager regarding her request for private office space for the Marketing Department personnel. In addition, another Law Firm partner who was deposed testified to the interaction between the Office Services Manager and the Plaintiff. Finally, emails identifying the Office Services Manager were produced in late 2009. Because Plaintiff was on notice of this witness through the discovery process, the motion is denied as it relates to this person. However, Defendants must supplement the disclosure with more detail to the extent that they are aware of any specific topics on which the witness may testify other than the request for office space.

C) <u>Administrative Assistant</u>: Another of the eight witnesses identified in Defendant's supplemental disclosures was an Administrative Assistant who would assist the Marketing Department when needed. The disclosure states that she has information "relating to her interaction with Plaintiff during her employment at [the Law Firm]." Plaintiff complains that this vague disclosure makes it impossible to know what knowledge the witness possesses. Defendants argue that Plaintiff was fully aware of this individual and testified about her during Plaintiff's own deposition. Based on the deposition testimony, it appears that the Administrative Assistant's name came up in connection with the private space issue.[5] The Court denies the motion to exclude the witness or otherwise sanction Defendants but will require that the disclosure be supplemented with more detail about the information that the witness possesses.

D) <u>Pitney Bowes Employees</u>: Two Pitney Bowes employees were among the eight additional persons with knowledge identified in the supplemental disclosure. The disclosure states that they have information "relating to the circumstances surrounding Plaintiff's removal of her personnel items from her office and Plaintiff leaving the Firm's premises on February 4, 2008." Plaintiff argues that she was unfairly surprised by the inclusion of these individuals because she was not given sufficient knowledge of their relevance during discovery. (Reply 10.) The only reference to the two men was during the deposition of O'Gara who said that, when Plaintiff came to the office on February 4, 2008, "the guys were waiting to bring her boxes down with her." When asked whether O'Gara intended to help Plaintiff carry her boxes to the car, she responded: "No, no, the two guys were doing it." O'Gara went on to explain that there was "one guy waiting, but I knew Danny [one of the Pitney Bowes employees who was added to the disclosure] was going to help her on that." (O'Gara Dep. 193:7-194:21.) Because Plaintiff worked at the Law Firm and was present when the individuals apparently assisted her with her boxes, the Court finds that she had adequate

| STATEMENT |
|---|
| notice of these individuals and the information they possess. The Court denies the motion to exclude these witnesses or otherwise sanction Defendants but will require that the disclosures be supplemented with more detail if the witnesses have information other than that they assisted Plaintiff in removing her personal items from the Law Firm.<br><br>     Considering all the circumstances, including the nature of the evidence at issue, the Court declines to find that Defendants have engaged in "trial by ambush" (Reply 13) in connection with the disclosure of these witnesses.  Plaintiff's Second Motion *in Limine* and Motion for Sanctions is denied. |

1. Because these documents were not bates-stamped by Defendants, Plaintiff has marked them "Def. 05/03/10 Prod. 00001- Def. 05/03/10 Prod. 04449."

2. For example, several of the emails relate to administrative matters stemming from the return of Sara Goddard to the firm in May 2008.  A few emails discuss the job description for the new marketing position which was also discussed in emails produced on May 3, 2010.

3. Plaintiff also prepared an affidavit (never signed) for another of the other former associates, however, it has been withheld on privilege grounds so it is not known whether it identifies her supervising partners.

4. Molly O'Gara testified that the third female associate lodged a complaint after she was terminated. O'Gara said the nature of the allegation was that the associate's direct attorney supervisor (identified by name in the deposition) had indicated that the associate would receive a large increase in salary effective January 1st but the associate did not receive as large an increase as anticipated after giving the firm notice that she was pregnant. (O'Gara Dep. 19-20.)

5. Counsel elicited that the administrative assistant (and another employee) had been at the Law Firm longer than two of the marketing staff who worked under Plaintiff yet they worked in cubicles.  (Pl. Dep. 20-21.)