# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | Sheila Finnegan |
|---|---|---|---|
| **CASE NUMBER** | 08 C 6912 | **DATE** | 8/11/2010 |
| **CASE TITLE** | Makowski vs. SmithAmundsen LLC | | |

**DOCKET ENTRY TEXT**

For the reasons discussed below, Plaintiff's Motion to Compel Financial Information [103] is granted in part and denied in part.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

Plaintiff Laura A. Makowski filed a Motion to Compel Financial Information [103] that asks the Court to compel Defendants to respond to Plaintiff's inquiry regarding the financial information, revenue and income of the Defendants. For the reasons discussed below, the motion is granted in part and denied in part.

### BACKGROUND

On February 4, 2008, Plaintiff was terminated from her position as Marketing Director for the Defendant Law Firm. She was told that her position was being eliminated pursuant to an organizational restructuring. The next day, the second-in-command in the Marketing Department unexpectedly announced her intention to leave the Law Firm. At that point, Defendants began searching for a new hire to run the marketing department rather than offering the position to Plaintiff.

On December 3, 2008, Plaintiff filed a complaint alleging violations of Title VII and the Family and Medical Leave Act (she was on maternity leave at the time of her termination). She also seeks punitive damages from the Law Firm under Title VII.

In January 2010, Plaintiff moved to compel production of documents reflecting the revenue generated for the Law Firm by defendant Amundsen in 2007 and 2008. Plaintiff asserted that this information was needed in order to examine and test the credibility of Defendants' assertion that the Law Firm "transitioned" the administrative functions of Plaintiff's job to defendant Amundsen (a name partner). (Dkt 60.) On March 3, 2010, Magistrate Judge Mason denied the motion:

| STATEMENT |
|---|

  We find no basis that this highly-confidential information is relevant to any
  claim or defense in this case. Plaintiff's basis for obtaining
  this information is unsupported and far too tenuous.
  Moreover, Amundsen's administrative activities are
  discoverable through a less invasive means – his time records
  of those activities. Plaintiff's request that defendants be
  compelled to produce their revenue records is denied.

(Dkt. 81.)

In April 2010, Plaintiff deposed Defendants Amundsen and Delargy and inquired regarding "the revenue and income of the Law Firm and the individual defendants." (Mot. 2.) Defense counsel instructed both witnesses not to answer the questions based on the March 3, 2010 ruling, and so defendants declined to answer. On May 3, 2010, Plaintiff filed this motion, asking the Court to order Defendants to "produce information and answer plaintiff's inquiries regarding their income, revenue and net worth." (Mot. 5.) Plaintiff suggests that this be done through supplemental depositions upon written questions under Fed. R. Civ. P. 31.

## DISCUSSION

As a preliminary matter, Plaintiff did not identify the specific questions to which she seeks answers, or attach the deposition excerpts reflecting the questions that the individual Defendants refused to answer. Based on the excerpts included in Defendants' response, the Court understands that Plaintiff seeks to compel answers to the following questions posed at the depositions:

1) The total annual compensation of Defendant Amundsen in 2009 and 2010
2) The total annual compensation of Defendant DeLargy in 2009 and 2010
3) The Law Firm's annual revenue in 2008, 2009 and 2010.

Plaintiff states that this information is relevant for two reasons. First, she is seeking punitive damages from the Law Firm so financial information is needed to enable the jury to assess the appropriateness of such damages. Second, because Defendants intend to argue that the Law Firm had fewer than 200 employees (by excluding equity members) such that Plaintiff's non-economic damages would be subject to a lower cap under Title VII, the Court "should be apprised of the Law Firm's annual revenues and net worth in considering [the issue]." (Mot. 5.) Plaintiff does not explain why the two issues are linked other than to say that it would be "unfair to allow defendants to argue for a lower cap on non-economic damages based upon the alleged smaller size of the Law Firm while refusing to disclose the Law Firm's financial information." *Id.*

This Court concludes that evidence concerning the Law Firm's revenues and the annual compensation of defendants Amundsen and DeLargy is irrelevant to the cap issue and whether equity members of the Law Firm are counted among "employees" for purposes of determining the total number of employees. Therefore, discovery of the financial information will not be ordered on this basis

Plaintiff's other and stronger argument for production is that the evidence is relevant to punitive damages. Plaintiff acknowledges, however, that she has a punitive damages claim only against the Law Firm (under Title VII) but not against Defendants Amundsen and DeLargy. She nonetheless argues that the compensation for the two partners who are also named defendants is relevant because the Law Firm is a limited liability company and it may have little in the way of actual net worth of its own because its worth

may be paid out in the form of compensation to its partners and officers. (Reply 6.) But even if this were correct, it would not necessitate disclosure of the specific compensation paid to these two individual partners (Amundsen and DeLargy) but rather the total compensation (lump sum) of all partners and officers. It is unknown whether Plaintiff ever sought such information during discovery. In any event, the Court is not persuaded that, because the Law Firm is a limited liability company, the compensation of two specific partners who are also named as defendants is relevant to the punitive damages claim against the Law Firm. The motion to compel is denied as it relates to the compensation information for the individual defendants.

Plaintiff has a plausible argument, however, as it pertains to discovery of the Law Firm's revenues since the firm *does* face a punitive damages claim. Defendants argue that Magistrate Judge Mason already has ruled on the issue and denied access to the information. (Resp. 1-2.) But we agree with Plaintiff that Magistrate Judge Mason was never asked to decide whether this financial information was discoverable on the issue of punitive damages (and this Court could reconsider the prior ruling in any event). Defendants also argue that financial information of a corporate defendant will not necessarily be permitted at trial. *See, e.g., Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 508-509 (7th Cir. 1992) (noting that a corporate defendant's net worth is irrelevant to the assessment of punitive damages against it); *Pivot Point Int'l, Inc. v. Charlene Products, Inc.*, 932 F. Supp. 220, 223 (N.D. Ill. 1996) (evidence concerning financial information has . . .[the] potential to distract the jury from the essential issues of the case.). Of course, Plaintiff is able to cite contrary law where courts allowed such evidence. *See, e.g., Jones v. Scientific Colors, Inc.,* No. 99 C 1959, 2001 WL 902778, at *1 (N.D. Ill. July 3, 2001). It will be up to District Judge to determine the admissibility of the evidence in question. The issue now is simply whether the Law Firm's revenue figures are discoverable.

Defendants next observe that Plaintiff's damages are limited since she landed a new job within two months of leaving the Law Firm and was able to earn substantially more money than what she would have earned had she stayed at the Law Firm. In addition, they note that her compensatory damages under Title VII are capped at $100,000 if the Firm had under 200 employees during the relevant time period. 42 U.S.C. §1981a(b)(3).[1] As with the prior argument, while Defendants may well have reasonable arguments for excluding the firm's revenue figures at trial in light of the low actual and capped damages and how this bears on permissible punitive damages, this argument is one that the District Judge must decide in the context of the trial.

Even assuming evidence of a corporate defendant's net worth or ability to pay is admissible at trial, Defendants argue that the Law Firm's annual revenues in 2008, 2009 and 2010 are not probative of its net worth or ability to pay since the focus at trial would be on the firm's *current* net worth and ability to pay. *Fieldturf Int'l, Inc. v. Triexe Mgmt. Group, Inc*., 2004 U.S. Dist. LEXIS 6676, at *9 (N.D. Ill. 2004). The Court agrees that the revenue information from 2008 is not probative of the firm's ability to pay or its net worth as of the time of trial (October 2010). The motion to compel the revenues in 2008 is denied. It is also questionable whether the revenue figures in 2009 and 2010--standing alone--are probative since these figures, while more recent, do not reflect the firm's expenses (e.g., rent, salaries to associates and other employees). However, because the standard for relevancy is broad and there is at least some chance that the District Judge will allow evidence of the Law Firm's revenues in 2009 and 2010 on the punitive damages issue, this Court finds that this information is discoverable.

Defendants lastly ask that the production of the revenue information be delayed until after their summary judgement motion is decided or until the eve of trial given its questionable relevance and the sensitivity of the information in a highly competitive market. The Court will require Defendants to produce the Law Firm's revenue information one week before trial unless the information no longer is necessary in

| STATEMENT |
|---|

light of evidentiary or other rulings made by the District Judge. The information may be produced on an "Attorneys Eyes Only" basis. However, Defendants must produce to Plaintiff within two weeks of the entry of this Order a template of what they plan to produce one week before trial (only the revenue figures may be omitted). In this way, Plaintiff will be on notice of what she will be receiving and any issues concerning the format of the information may be resolved well before trial.

Under the circumstances here, this type of delayed production (but with a template provided in advance) is appropriate and will not prejudice the Plaintiff. We are not confronted with a situation like the one in *Challenge Aspen v. King World Prods. Corp.*, No. 00 C 6868, 2001 U.S. Dist. LEXIS 18357 (N.D. Ill. Nov. 8, 2001), where defendants had asserted shifting positions as to the ease of assembling and producing the financial information. Anticipating potential disputes and delay relating to the production, the court felt it would be wise to require the production sooner rather than later so that any issues could be resolved well before trial. In the pending case, the financial information (the Law Firm's annual revenue figures) is easily produced and last minute disputes about the adequacy of the information can be avoided by requiring a template to be produced now with only the revenue figures omitted.

In conclusion, as set forth above, Plaintiff's Motion to Compel Financial Information is granted in part and denied in part.

---

1. Plaintiff argues that equity members of the Law Firm should be counted as employees and, if they are, then the cap will be $200,000.