UNITED STATES DISTRCT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LAURA A. MAKOWSKI, )
)
Plaintiff, )
) Case No. 08 C 6912
v. )
) Judge John W. Darrah
SMITHAMUNDESN, LLC, et al., )
)
Defendants. )

**MEMORANDUM OPINION AND ORDER**

Laura Makowski filed a four-count-complaint against her former employer, SmithAmundsen, LLC; Glen Amundsen, named partner and chairman of SmithAmundsen's Executive Committee; and Michael DeLargy, Smith Amundsen's Chief Operating Officer, alleging: (1) a violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964; (2) a violation of Plaintiff's rights under the Family and Medical Leave Act ("FMLA") because SmithAmundsen failed to reinstate her after she completed her FMLA leave; (3) a violation of Plaintiff's FMLA rights because SmithAmundsen failed to pay Plaintiff her bonus; and (4) a violation of Plaintiff's FMLA rights because SmithAmundsen interfered with Plaintiff's exercise of her rights protected by the FMLA and because SmithAmundsen retaliated against Plaintiff for exercising her rights protected by the FMLA. Defendants have moved for summary judgment on every count of Plaintiff's Complaint.

**BACKGROUND**

Plaintiff was an employee of SmithAmundsen and was the Director of Marketing. (Defs.' 56.1(a)(3) ¶ 1). SmithAmundsen is a law firm and is formed as a limited-liability corporation. *Id.* at 6. The members with an ownership interest in SmithAmundsen LLC have the

exclusive right to manage the operations of SmithAmundsen. *Id.* The Executive Committee is responsible for the day-to-day activities of SmithAmundsen. *Id.* The Executive Committee meets every year in January for a retreat and analyzes and discusses SmithAmundsen's overall structure and how the administrative functions are performed. *Id.* at 16. The discussions at the January retreats include an assessment of all of the administrative and attorney positions at SmithAmundsen and an analysis as to whether SmithAmundsen is properly staffed or whether changes need to be made to add or reduce staff. *Id.*

At the beginning of 2008, the Marketing Department consisted of: (1) Plaintiff, as the Director of Marketing; (2) Sara Goddard, as Marketing Project Manager; (3) Lauren Siegel, as the Marketing Coordinator; and (4) Kristi Fitzgerald, as the part-time Marketing Assistant. *Id.* at 15. Plaintiff's annual base salary for 2008 would have been $95,000, and Goddard's annual salary was $50,000. *Id.* at 22. Further, in Plaintiff's 2007 year-end self-evaluation, Plaintiff suggested a $30,000 increase in total compensation from $115,000 to $145,000. *Id.* at 25.

On November 1, 2007, Plaintiff had a confrontation with DeLargy that lasted approximately ten minutes. *Id.* at 56. DeLargy was upset with Plaintiff for "going over his head" in asking for office space for the Marketing Department. *Id.* at 62. DeLargy used words to the effect that he wanted to rip Plaintiff a new one. *Id.* at 63. It was the only episode, prior to her being fired while on maternity leave, where she believed the work atmosphere at SmithAmundsen was hostile. *Id.* at 56.

In the summer of 2007, Plaintiff announced that she was pregnant. (Pl.'s 56.1(b)(3)(C) ¶ 2.) Plaintiff began her maternity leave in November 2007[1] and gave birth to her son in

---

[1] The parties dispute the exact date in November 2007 that Plaintiff began maternity leave. Plaintiff asserts that she began her leave on November 26, 2007. Defendants counter that

2

December 2007. *Id.* On February 4, 2008, Amundsen and DeLargy advised Plaintiff that her employment had been terminated. (Defs.' 56.1(a)(3) ¶ 35.)

On February 5, 2008, Goddard announced that she had accepted a position with another law firm. *Id.* at 39. SmithAmundsen began a search for a marketing professional who would fill the role that SmithAmundsen envisioned would have been filled by Goddard. *Id.* After a few months, SmithAmundsen was able to convince Goddard to return to SmithAmundsen. *Id.* at 42. Goddard returned to SmithAmundsen with the job title "Business Development and Marketing Manager" and was paid $85,000 annually. *Id.*

## ANALYSIS

*FMLA – Counts II, III and IV*

<u>Plaintiff's Termination</u>

Plaintiff argues that her FMLA rights were violated when she was not reinstated to her prior position after she completed her maternity leave. Defendants argue that Plaintiff was not entitled to reinstatement under the FMLA and that the termination of her employment did not violate the act.

"The FMLA . . . entitles an employee on leave to the right to return to the same position and benefits she had just before she took leave." *Simpson v. Office of the Chief Judge of the Circuit Court (Simpson)*, 559 F.3d 706, 712 (2009) (citing 29 U.S.C. § 2612(a)(1)-(2)). However, employees are only entitled to the right, benefit, or position they would have been entitled to had they not taken the leave. *Id.* "The FMLA allows an employer to 'refuse to restore an employee to their former position when restoration would confer a right, benefit, or position of employment that the employee would not have been entitled to if the employee had never left

---

Plaintiff began her leave on November 6, 2007, but was permitted to work from home so that she could postpone the official start of her FMLA leave until November 26, 2007.

the workplace.'" *Id.* (quoting *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, 805 (7th Cir. 2001.) "[A]n employee is not entitled to return to her prior position if she would have been demoted or terminated regardless of whether she took FMLA leave." *Id.*

FMLA claims may be brought under either an interference/entitlement theory or a retaliation theory. *See Goelzer v. Sheboygan County*, 604 F.3d 987, 992 (7th Cir. 2010). The burden to prove FMLA interference lies with the plaintiff-employee. *Simpson*, 559 F.3d 706, 712 (2009). To prevail, Plaintiff must show that: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 761 (7th Cir. 2008). The parties do not dispute that Plaintiff satisfies the first four requirements but dispute whether Plaintiff can satisfy the fifth requirement.

Defendants argue that Plaintiff's position would have been terminated even if Plaintiff did not take leave and, therefore, Plaintiff is not entitled to reinstatement, and Defendants did not violate her FMLA rights. In support of this assertion, Defendants submit the following. Every year the Executive Committee meets in January for a retreat. At the January 2008 meeting, SmithAmundsen implemented an "organization restructuring," which included eliminating Plaintiff's position and that of the Director of Information Technology. Amundsen concluded that SmithAmundsen could still get the best overall performance and achieve the same results by eliminating Plaintiff's position and going forward with just two full-time employees instead of three, in the Marketing Department.

In coming to this conclusion, Amundsen considered the relative strengths and weaknesses of each member of the Marketing Department and concluded that Goddard would be better for

4

the tasks laying ahead for the Marketing Department than Plaintiff. Amundsen also considered Plaintiff's future compensation expectations. Plaintiff indicated that she would be seeking an increase in total compensation from $115,000 to $145,000. This expected compensation was almost three times the $50,000 Goddard was earning. Amundsen believed SmithAmundsen could not meet Plaintiff's expectations with respect to compensation. The Executive Committed approved Amundsen's recommendation to eliminate Plaintiff's position. On February 4, 2008, Amundsen told Plaintiff that her position had been eliminated and her employment terminated.

As mentioned above, when Goddard unexpectedly announced that she had accepted a position with another firm, SmithAmundsen began searching for a market professional who would fill the role that SmithAmundsen envisioned Goddard would fill after Plaintiff was eliminated. Eventually, SmithAmundsen was able to convince Goddard to return to SmithAmundsen. Goddard was made the Business Development and Marketing Manager. As such, Goddard performed all of the functions that she previously performed and those few duties that were previously performed by the Director of Marketing. SmithAmundsen now employs two full-time employees in the Marketing Department, instead of three when Plaintiff was employed there.

Plaintiff argues that she was terminated because she took leave pursuant to the FMLA. In support of her assertion, Plaintiff claims: Plaintiff was told that her job was being eliminated as part of an "organization restructuring"; Plaintiff's job duties were absorbed by others at SmithAmundsen who were not pregnant and had not taken leave under the FLMA; SmithAmundsen agreed to pay Plaintiff's initial replacement's salary that exceeded the salary paid to Plaintiff.

5

A plaintiff may show discrimination through either the direct or indirect method. *Simpson*, 559 F.3d at 717. To overcome Defendants' summary judgment motion via the direct method, Plaintiff must show: (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two. *Id.*

The parties do not dispute that Plaintiff meets the first and second requirements of the direct method in this case. As to the third requirement, Plaintiff offers evidence that Molly O'Gara, SmithAmundsen's Director of Human Resources, made certain statements to Plaintiff supporting Plaintiff's claim that Plaintiff was fired because of her pregnancy and medical leave. Plaintiff alleges that O'Gara admitted to Plaintiff that: Plaintiff was fired because of her pregnancy and protected FMLA leave; O'Gara could not stand by and watch this continue to happen, that plaintiff was not the only person this has happened to, and that other people have been let go because of pregnancy or medical leave; there was no organization restructuring; and the idea to label plaintiff's termination as part of an organization restructuring had come from outside counsel.

Defendants deny O'Gara made these statements and have moved to strike O'Gara's statements as inadmissible hearsay.[2] Plaintiff argues that these statements are party admissions and are therefore admissible. Admissions by a party-opponent are governed by Rule 801(d)(2)(D) of the Federal Rules of Evidence, which provides that "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D).

---

[2] At her deposition, O'Gara denied having made any of the alleged statements. (O'Gara Dep. at 104-110.)

6

"For an agent's statement regarding an employment action to constitute an admission, she need not have been personally involved in that action, but her duties must encompass some responsibility related to 'the decisionmaking process affecting the employment action.'" *Stephens v. Erickson*, 569 F.3d 779, 793 (7th Cir. 2009) (quoting *Simple v. Walgreen Co.*, 511 F.3d 668, 672 (7th Cir.2007)). "[T]he subject matter of the admission [must] match the subject matter of the employee's job description." *Aliotta v. AMTRAK*, 315 F.3d 756, 762 (2003).

Plaintiff asserts that O'Gara's responsibilities as Director of Human Resources were sufficiently related to the decision-making process regarding Plaintiff's termination such that Rule 801(d)(2)(D) applies. Plaintiff notes that O'Gara testified at her deposition that she was responsible for handling personnel matters, employee relations matters, employee benefits issues, and recruiting and hiring administrative personnel. Plaintiff also notes that Defendants have admitted that "before [P]laintiff was fired on February 4, 2008, O'Gara consulted with outside counsel regarding the decision." (Pl.'s Resp. to Mtn. to Strike, p. 18.)

Plaintiff has failed to show that O'Gara's job responsibilities were related to the Executive Committee's decision to eliminate Plaintiff's position. While O'Gara may have had extensive duties with respect to human resources generally, Plaintiff has not shown that those duties extended to any involvement in the decision to *terminate* Plaintiff. Rather, the deposition testimony offered by Defendants is consistent that O'Gara learned of the decision only after it had been made. The closest Plaintiff comes to establishing the required nexus is her assertion that O'Gara consulted with outside counsel regarding the decision. However, as O'Gara's deposition testimony makes clear, this contact occurred after the decision to terminate Plaintiff had been made. Thus, O'Gara's contact with outside counsel does not show that she was

7

involved in the decision-making process. Therefore, O'Gara's statements concerning Plaintiff's termination are not an admission under Rule 801(d)(2)(D) and will not be considered here.

Without O'Gara's statements, Plaintiff has no evidence of a direct connection between her protected activity and her termination. Similarly, were she to proceed under the indirect method, even assuming Plaintiff could establish a *prima facie* case, Plaintiff could not refute Defendants' legitimate business reasons for the elimination of the Director of Marketing position. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 635 (7th Cir. 2009) (a plaintiff has the burden of showing that proffered legitimate reasons for the employment action are "false and only a pretext for discrimination"). Therefore, Defendants' Motion for Summary Judgment is granted with respect to Plaintiff's termination.

## Plaintiff's Bonus

Plaintiff argues that her FMLA rights were violated because SmithAmundsen did not pay her a bonus during her maternity leave. "An employee's entitlement to benefits other than group health benefits during a period of FMLA leave (e.g., holiday pay) is to be determined by the employer's established policy for providing such benefits when the employee is on other forms of leave (paid or unpaid, as appropriate)." 29 CFR § 825.209(h). In determining whether a bonus is given at SmithAmundsen, "The basic consideration is whether their performance outpaced the salary that they were paid for that quarter." (Def.'s 56.1(a)(3) ¶ 68.) SmithAmundsen argues Plaintiff did not receive her quarterly bonus for the fourth quarter of 2007, because Plaintiff did not meet the standards for earning a bonus given her performance and time not working. Specifically, Amundsen did not recommend that Plaintiff receive a quarterly bonus because Plaintiff did not accomplish any work during the quarter that would merit a bonus.

Plaintiff fails to raise a genuine issue of material fact as to whether or not her performance outpaced that of her salary. Accordingly, SmithAmundsen's Motion for Summary Judgment is granted as to Plaintiff's claim that she was not paid a 2007 fourth-quarter bonus in violation of her FMLA rights.

*Title VII Claims – Count I*

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Plaintiff alleges that SmithAmundsen violated her rights pursuant to Title VII of the Civil Rights Act of 1964 because SmithAmundsen discriminated against Plaintiff on the basis of her sex and pregnancy by engaging in the following adverse employment actions: (1) creating a hostile work atmosphere; (2) subjecting her to belittling, verbally abusive and intimidating and hostile conduct; (3) withholding and refusing to pay earned compensation; and (4) firing her.

Plaintiff claims that her rights under Title VII were violated because she was exposed to a hostile work environment and was subject to verbally abusive and belittling and hostile conduct. Plaintiff's Complaint and Response in Opposition to Defendant's Motion for Summary Judgment are silent as to what made a hostile work environment. However, Plaintiff admits that the only incident that she believes that constituted a hostile work environment was the ten-minute conversation she had with DeLargy regarding Plaintiff's request to Amundsen for office space for the Marketing Department.

A "single incident, which [is] of very limited duration and included nothing but expressive behavior, with no follow-up or repeat, is simply not enough to violate Title VII as

9

sexual harassment." *Gonzalez v. NeuStar, Inc.*, 2003 U.S. Dist. LEXIS 25761, at *10 (N.D. Ill. Dec. 4, 2003) (internal citations omitted).

In this case, Plaintiff only points to one ten-minute conversation she had with a co-worker that created the hostile environment. Accordingly, SmithAmundsen's Motion for Summary Judgment is granted as to Plaintiff's Title VII claim alleging a hostile work environment and exposure to verbally abusive and belittling conduct.

Plaintiff also alleges that her Title VII rights were violated because Defendants terminated Plaintiff's employment and failed to pay her a bonus because she was pregnant and took FMLA leave. As explained above, Plaintiff has failed to rebut Defendants' explanation for both her termination and her failure to receive a bonus. Accordingly, Defendants' Motion for Summary Judgment is granted as to Plaintiff's Title VII claim.

## CONCLUSION

For the above-mentioned reasons, Defendants' Motion for Summary Judgment is granted.

Date: September 7, 2010

JOHN W. DARRAH
United States District Court Judge

10